UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| American Crystal Sugar Company, | Civil File No: 0:19-cv-02319-ECT/LIB |
| Plaintiff, | Case Type: CONTRACT |
| vs. | **DEFENDANT BIWER & ASSOCIATES, INC.'S ANSWER TO COMPLANT AND COUNTERCLAIM** |
| Biwer & Associates, Inc., | |
| Defendant. | |

Defendant Biwer & Associates, Inc. ("Biwer"), as and for its Answer to Plaintiff American Crystal Sugar Company's ("Plaintiff" and/or "American Crystal") Complaint, states and alleges as follows. Biwer denies each and every allegation in the Complaint to the extent the allegations have not been specifically admitted below.

## THE PARTIES

1.      In response to Paragraph 1, upon information and belief, Biwer admits the information about Plaintiff's name and business location.

2.      In response to Paragraph 2, Biwer admits the allegations.

## JURISDICTION AND VENUE

3.      In response to Paragraph 3, Plaintiff's assertion of subject matter jurisdiction is a legal assertion, not a factual allegation capable of being admitted or denied.  But Biwer does not contest that this Court has subject-matter jurisdiction over this matter.

4.      In response to Paragraph 4, Plaintiff's venue assertion is a legal assertion, not a factual allegation to be admitted or denied.  But Biwer does not contest venue.

## BACKGROUND

5.      In response to Paragraphs 5, 6, 7, 8, 9, 10, and 11, the information provided in these paragraphs is contained in Plaintiff's ACSC Ag System Replacement Request for Proposal and/or website, and to the extent the truth of it is relevant, puts Plaintiff to its strictest proof thereof.

6.      In response to Paragraph 12, Biwer admits it had several introductory phone calls with American Crystal representatives in August and September 2017 during which Biwer provided an overview of its software solutions and American Crystal provided an overview of its operations and needs. Biwer denies any in-person meetings with American Crystal representatives took place in August or September 2017. As to the remainder of the allegations in this Paragraph, Biwer is without sufficient knowledge to admit or deny and therefore puts Plaintiff to its strictest proof thereof.

7.      In response to Paragraph 13, Biwer lacks sufficient knowledge to either admit or deny the allegations, and to the extent the truth of it is relevant, puts Plaintiff to its strictest proof thereof.

8.      In response to Paragraph 14, Biwer lacks sufficient knowledge to either admit or deny the allegations, and to the extent the truth of it is relevant, puts Plaintiff to its strictest proof thereof.

9.      In response to Paragraph 15, Biwer lacks sufficient knowledge to either admit or deny the allegations, and to the extent the truth of it is relevant, puts Plaintiff to its strictest proof thereof.

10.     In response to Paragraph 16, Biwer acknowledges receipt of American Crystal's Ag System Replacement Request for Proposal, a document which speaks for itself, but lacks sufficient knowledge to either admit or deny the other allegations contained in Paragraph 16, and to the extent the truth of it is relevant, puts Plaintiff to its strictest proof thereof.

11.     In response to Paragraph 17, Biwer acknowledges the existence of American Crystal's Ag System Replacement Request for Proposal, a document which speaks for itself. At no time did Biwer represent or promise that it would provide a turn-key solution for the project. Biwer lacks sufficient knowledge to either admit or deny the remaining allegations contained in Paragraph 17, and to the extent the truth of it is relevant, puts Plaintiff to its strictest proof thereof.

12.     In response to Paragraph 18, Biwer acknowledges the existence of American Crystal's Ag System Replacement Request for Proposal, a document which speaks for itself.

13.     In response to Paragraph 19, upon information and belief, Biwer admits the allegations.

14.     In response to Paragraphs 20 and 21, Biwer admits the allegations.

15.     In response to the second sentence of Paragraph 22, Biwer admits that in its project proposal, and at meetings in which it was discussed, Biwer represented that it had the experience and expertise to capture (with American Crystal's cooperation and involvement) American Crystal's functional needs and business requirements to deliver a configured CPS. Biwer admits the allegations in the other sentences of Paragraph 22.

16.     In response to Paragraph 23, Biwer admits the allegation in the first sentence. Biwer specifically denies the allegation in the last sentence in Paragraph 23.

17.     In response to Paragraph 24, Biwer admits the allegations.

18.     In response to Paragraph 25, Biwer admits it represented customization and configuration are contingent on Plaintiff fulfilling its obligation to define detailed requirements.

19.     In response to Paragraph 26, Biwer admits it was aware of the overall project goals and timeline which were contingent on Plaintiff's contractual requirement to share requirements, confirm the accuracy of the requirement definition and validation of the user stories, all of which it failed to do in a timely manner.

20.     In response to Paragraph 27, Biwer denies the allegations.

21.     In response to Paragraph 28, with respect to the first sentence, Biwer admits its initial estimate of the cost to implement the RFP requirements was $895,000 +/- 15%. With respect to the second sentence, Biwer admits the allegations.

22.     In response to Paragraph 29, Biwer generally agrees with the allegations with the understanding at this stage the parties were still discussing "high level" and not detailed requirements.

23.     In response to Paragraph 30, Biwer admits having additional pre-contract meetings with Plaintiff in which the requirements from the RFP were always in flux. With respect to the last sentence, Biwer denies making representations about its "turn-key ability." Biwer lack is unable to admit or deny the remaining allegations in the last sentence because Plaintiff has not identified any particular representations related to the

subject matters identified, who made the representations, and when the representations were made.

24.     In response to Paragraph 31, Biwer admits the allegations.

25.     In response to Paragraph 32, Biwer admits the allegations in the first two sentences.  In response to the allegations in the third sentence, Biwer admits that during the onsite meetings held on September 17-19, 2018, Biwer received an opportunity to gather high-level information about American Crystal's Ag System and business requirements, but Biwer denies it was an opportunity for a detailed study.  Biwer denies the allegations in the final sentence of Paragraph 32.

26.     In response to Paragraph 33, Biwer admits the allegations in the first three sentences.  Biwer denies all remaining allegations in Paragraph 33.

27.     In response to Paragraph 34, Biwer admits the allegations.

28.     In response to Paragraph 35, Biwer admits certain representations were made by Mr. Biwer about its qualifications, and specifically deny that any representations made by him were false.

29.     In response to Paragraph 36, Biwer admits the allegations in the first sentence.  With respect to the second sentence, Biwer lacks sufficient knowledge to either admit or deny the allegations, and to the extent the truth of it is relevant, puts Plaintiff to its strictest proof thereof.

30.     In response to Paragraph 37, Biwer admits that American Crystal and Biwer entered into the Contract Services Agreement and Software Licensing Agreement both of which had an effective date of January 14, 2019.  Biwer admits it entered into a

Statement of Work (SOW) agreement with American Crystal, but denies its effective date was March 13, 2019. The effective date of the SOW was February 8, 2019. Biwer further admits that the parties' contract included the Contract Services Agreement, Software Licensing Agreement and SOW. Biwer denies the allegations in Paragraph 37 to the extent it is implied that there were no subsequent modifications to the parties' written contract after the effective dates of the Contract Services Agreement, Software Licensing Agreement and SOW. Biwer denies the remaining allegations in Paragraph 37.

31.    In response to Paragraph 38, Biwer admits the allegations.

32.    In response to Paragraph 39, Biwer admits that the SOW provided that Biwer's professional services would be compensated on a time and materials basis the total cost of which would not exceed $1.2 million, but the "not to exceed" amount did not include travel costs and it was subject to change based on significant changes in the scope of the project through the change order process. Biwer admits that it agreed to charge $175 per hour for its professional services performed as part of the SOW. Biwer further admits in the SOW Biwer would hold back 10% on all of its professional service invoices the payment of which would occur in two separate amounts tied to the successful completion of milestones referenced on page 8 of the SOW. Biwer denies any remaining allegations in Paragraph 39.

33.    In response to Paragraph 40, Biwer denies that American Crystal was never able to use Biwer's CPS "because Biwer failed to complete a single Milestone." American Crystal was not able to use the CPS because American Crystal wrongfully and prematurely terminated the parties' contract and American Crystal materially breached

the parties' contract by failing to abide the customer obligations in the "Cooperation" provision (section 3.2) of the Contract Services Agreement and the "Work Requirements" and "Duties of Customer" provisions of the SOW. Biwer admits that American Crystal has paid an amount of money to Biwer for software implementation fees, the amount of $500,000 to Biwer for a software license to use Biwer's Commodity Procurement System, and $44,835 for Oracle license fees. Biwer lacks sufficient knowledge to admit or deny whether and in what amount American Crystal spent money on hardware for the project and puts Plaintiff to its strict burden of proof. Biwer denies all remaining allegations in Paragraph 40.

34.      In response to Paragraph 41, Biwer denies the allegations in the first sentence. Biwer admits that the Contract Services Agreement contains the "time is of the essence" and warranty provisions referenced in the final two sentences of Paragraph 41.

35.      In response to Paragraphs 42 and 43, Biwer denies the allegations.

36.      In response to Paragraph 44, Biwer admits the allegation.

37.      In response to Paragraph 45, Biwer admits the SOW provided that the Applicable Specifications generally needed to be approved before Biwer could begin development work. However, the SOW also expressly states Biwer could begin development work on parts of the project for which there was approval of Applicable Specifications. Biwer admits the remaining allegations in Paragraph 45.

38.      In response to Paragraphs 46 and 47, Biwer admits the allegations.

39.      In response to Paragraphs 48, 49 and 50, Biwer denies the allegations.

40.     In response to Paragraph 51, Biwer admits that the allegation accurately quotes part of the cited provision of the Contract Services Agreement. The same contractual provision partially quoted by American Crystal also states, "Customer agrees that it will cooperate with Biwer in accomplishing the purpose of the services."

41.     In response to Paragraphs 52, Biwer denies that the "blueprinting phase" of a software implementation project is synonymous with the "design phase" but otherwise generally admits the allegations with the additional caveat that another critical component of the blueprinting phase is the customer's involvement is needed.

42.     In response to Paragraphs 53, 54 and 55, Biwer admits that these broad-statements are generally true but Biwer denies the broad statements are precisely applicable to the services and software solution to be delivered by Biwer under the contract at issue. Biwer's contract with American Crystal did not make Biwer responsible for the design or implementation of American Crystal's entire ERP system.

43.     In response to Paragraphs 56, Biwer admits that under the agreements applicable to the project, Biwer had partial responsibility for completion of the design phase of the project.  American Crystal also had contractual responsibilities during the design phase of the project. The remaining allegations in Paragraph 56 pertaining to design phase responsibilities of Biwer includes redundant statements about creating test scenarios and creating test data, but Biwer admits those allegations are generally true subject to American Crystal's assurances that it would provide all of its detailed requirements to make possible the creation of test scenarios and test data. Biwer

specifically denies it failed to comply with any of the obligations referenced in Paragraph 56.

44.     In response to Paragraph 57, Biwer admits the allegations in the first two sentences. Biwer denies all remaining allegations in Paragraph 57.   Milestone 1 in the SOW was a foundational piece to establish American Crystal's shareholder accounting requirements.

45.     In response to Paragraphs 58 and 59, Biwer denies the allegations.

46.     In response to Paragraph 60, Biwer admits it had three separate onsite meetings at American Crystal in February, March and May of 2019 to capture American Crystal's business requirements. Biwer denies the remaining allegations in Paragraph 60.

47.     In response to Paragraph 61, as stated previously in this Answer, Biwer admits the SOW generally provided that development work should not begin before Applicable Requirements are approved by American Crystal.  But the Statement of Work also expressly stated that it was not necessary for all Applicable Requirements to be approved before any development work could begin.  Biwer admits that a limited amount of development work began before American Crystal had approved all of the Applicable Requirements for the entire project. Biwer denies the limited amount of development work created unnecessary rework. Biwer denies that its limited development work violated either the SOW or the unspecified industry standards alluded to in American Crystal's allegation.   To the extent that Paragraph 61 implies that Biwer began any development work without American Crystal's awareness and consent, the allegation is denied.

48.     In response to Paragraphs 62 and 63, Biwer denies the allegations.

49.     In response to Paragraph 64, the allegation about Mr. Biwer and the Biwer consultants' duty to disclose is a legal statement for which no response is required. Biwer denies that its alleged written statements of fact were false, misleading and material. Biwer admits its project team knew, generally, that American Crystal would be relying on Biwer's project team to perform the contractual professional services. In all other respects, express or implied, the allegations in Paragraph 64 are denied.

50.     In response to Paragraphs 65, 66 and 67, Biwer denies the allegations.

51.     In response to Paragraph 68, Biwer denies it made fraudulent misrepresentations or continued failures to meet its contractual obligations. Biwer denies that American Crystal had no choice but to terminate the agreements. With respect to the remaining allegations in Paragraph 68 pertaining to the mental state of American Crystal and its decision making, Biwer lacks sufficient knowledge to either admit or deny the allegations, and to the extent the truth of it is relevant, puts Plaintiff to its strictest proof thereof.

52.     In response to Paragraph 69, Biwer admits the Contract for Services contains such provisions. Biwer specifically denies it materially breached any of its agreements with American Crystal.

53.     In response to Paragraph 70, Biwer admits the Software License Agreement contains such provisions. Biwer specifically denies it materially breached any of its agreements with American Crystal and further denies it received a meaningful opportunity to perform the implementation and testing activities set forth in the SOW.

54.    In response to Paragraph 71, Biwer admits American Crystal notified Biwer it believed Biwer was in material breach of the Agreements, however, Biwer specifically denies it was in material breach.

55.    In response to Paragraph 72, Biwer denies the allegations.

56.    In response to Paragraph 73, Biwer denies it was in material breach of its contract with American Crystal at any time during the cure period.  Biwer also denies that American Crystal properly terminated the agreements pursuant to section 6.2 of the Contract Services Agreement or 7.1(e) of the Software License Agreement.  Biwer denies it owes any obligation to repay the fees that American Crystal paid on the project.

57.    In response to Paragraph 74, Biwer admits the Contract Services Agreement and Software License Agreement include the provisions cited in the allegation.  However, Biwer denies that it materially breached either agreement.  Biwer also denies that American Crystal properly terminated the Contract Services Agreement or the Software License Agreement.

58.    In response to Paragraph 75, Biwer admits that American Crystal has paid an amount of money to Biwer for software implementation fees, the amount of $500,000 for a software license to use Biwer's Commodity Procurement System, and $44,835 for Oracle license fees.  Biwer admits that American Crystal asked for all fees paid to be refunded. Biwer denies it has breached the contract or made any misrepresentations. Biwer further denies that American Crystal needed to find another consultant to complete the replacement of its Ag System when American Crystal decided (wrongfully) to terminate the contract.

## COUNT I

### (BREACH OF CONTRACT)

59.     Paragraph 76 of the Complaint does not call for a response.  To the extent a response is required, Biwer reincorporates each of its responses to the earlier paragraphs of the Complaint.

60.     In response to Paragraph 77, Biwer admits the allegation.

61.     In response to Paragraphs 78, 79, and 80, Biwer denies the allegation.

62.     In response to Paragraph 81, Biwer denies it materially breached any of the agreements with American Crystal and further denies there was a reasonable opportunity to cure the breach perceived by American Crystal.

63.     In response to Paragraph 82, Biwer denies it had any material breaches to cure.

64.     In response to Paragraphs 83, 84 and 85, Biwer denies the allegations.

## COUNT II

### (FRAUDULENT MISREPRESENTATION)

65.     Paragraph 86 of the Complaint does not call for a response.  To the extent a response is required, Biwer reincorporates each of its responses to the earlier paragraphs of the Complaint.

66.     In response to Paragraph 87, Biwer denies that any of the alleged representations was material or false.

67.     In response to Paragraph 88, 89, 90 and 91, Biwer denies the allegations.

## COUNT III

## (NEGLIGENT MISREPRESENTATION)

68.     Paragraph 92 of the Complaint does not call for a response.  To the extent a response is required, Biwer reincorporates each of its responses to the earlier paragraphs of the Complaint.

69.     Biwer asserts that the allegation in Paragraph 93 is a legal conclusion to which no response is required.  To the extent this paragraph is deemed to include factual allegations, Biwer denies them.

70.     In response to Paragraph 94, Biwer denies the allegations.

71.     In response to Paragraph 95, Biwer admits, generally, it was aware that American Crystal would be relying on Biwer's knowledge, expertise and experience to perform the contractual professional services to implement the CPS solution.  Biwer denies the remaining allegations in Paragraph 95.

72.     In response to Paragraph 96, Biwer denies that any of the alleged representations was material or false.

73.     In response to Paragraphs 97, 98, 99 and 100, Biwer denies the allegations.

## AFFIRMATIVE DEFENSES

1.     Biwer asserts that Plaintiff's Complaint fails to state a cause of action upon which relief may be granted.

2.     Biwer asserts that American Crystal's attempt to terminate the Contract Services Agreement, the Software License Agreement and the Statement of Work,

occurred prematurely under circumstances not authorized by the terms of those agreements. American Crystal's termination constituted an anticipatory breach.

3.     Biwer asserts that American Crystal violated its contractual obligations under sections 3.2 and 10.15 of the Contract Services Agreement and the "Duties of Customer" under the Statement of Work by failing to cooperate and coordinate with Biwer's project team in a timely manner with respect to the following customer obligations:

      a. American Crystal failed to review, provide feedback and approve the Applicable Requirements submitted by Biwer in a reasonably timely fashion as needed for advancement of the project;

      b. American Crystal failed provide Biwer with access to adequate resources and American Crystal's internal subject matter experts as needed for advancement of the project;

      c. American Crystal failed to set up hardware to create a developmental environment so that Biwer had someplace to deliver products for review, comment and approval by American Crystal as needed for advancement of the project;

      d. American Crystal failed to deliver detailed functional requirements to Biwer in a reasonably timely fashion as needed for advancement of the project; and

      e. American Crystal failed to provide the project management and oversight contemplated in the SOW, including lack of participation in status report meetings with the executive oversight team and meetings during the kick-off phase of the project as necessary to organize the project and create a project plan for the design phase of the project.

Each of these failures by American Crystal was a prior material breach of the Contract Services Agreement and/or Statement of Work thwarting and delaying Biwer's performance of its contractual responsibilities.

4.      Biwer asserts that the principal purpose of the written contract between Biwer and American Crystal was the completion of a customized software platform for American Crystal.  Biwer's performance of the contractual services contemplated by the Contract Services Agreement and the Statement of Work was prevented by American Crystal's conduct in: (a) creating delays in the kickoff and design phases of the project thereby throwing all milestone deadlines in the Statement of Work substantially behind schedule;  (b) failing to provide sufficient information requested by Biwer for project performance in a reasonably timely manner; (c) failing to devote reasonably adequate American Crystal employee resources to fulfill American Crystal's cooperation obligations; and (d) failing to provide timely review and approval of Biwer's project related submissions during the course of the project.

5.      Biwer asserts that American Crystal's claims are barred in whole or in part by American Crystal's consent or ratification of the actions of Biwer that American Crystal now challenges.

6.      Biwer asserts that American Crystal's claims are barred or limited by Plaintiff's failure to mitigate damages.

7.      Biwer asserts that, if American Crystal sustained any damages, the same was caused by American Crystal's own conduct.

8.      Biwer asserts section 8.1 of the Contract for Services precludes American Crystal's recovery of consequential, incidental, or special damages ("including lost profits") based on a breach of contract theory of recovery.  In addition, section 8.2 of the Contract for Services provides the exclusive limited remedy available to American

Crystal in the event of a breach of contract, negligence or misrepresentation by Biwer (each of which liability theories is expressly denied, above).

9.      Biwer asserts that American Crystal knowingly waived any contractual right it may have once had to rely upon the target dates for the milestones of the project that were originally stated in Exhibit B of the SOW because American Crystal's project team leadership subsequently issued new milestone target dates during the course of the project, after discussing and agreeing upon those new milestone target dates with Biwer project team members, and American Crystal published those new target dates on its website.

10.      Biwer asserts that Plaintiff's claims may be barred in whole or in part by the doctrine of unclean hands.

11.      Plaintiff's claims may be barred by any and all of the affirmative defenses contemplated by Rule 8(c) of the Federal Rules of Civil Procedure.  To the extent which Plaintiff's claims may be barred by one or more of said affirmative defenses, not specifically spelled out above, and cannot be determined until there is further discovery, Defendant reserves the right to amend this Answer to add affirmative defenses as the facts of the case are further developed.

## COUNTERCLAIMS OF BIWER & ASSOCIATES, INC.
## AGAINST AMERICAN CRYSTAL SUGAR COMPANY

Biwer & Associates, Inc., ("Biwer") for its counterclaim against American Crystal Sugar Company states as follows:

### PARTIES

1.     Counterclaimant Biwer is a Wisconsin corporation with its principal place of business in Hartland, Wisconsin.

2.     Counterclaim Defendant American Crystal Sugar Company is a Minnesota Cooperative with its principal place of business in Moorhead, Minnesota.

### JURISDICTION

3.     This Court has jurisdiction under 28 U.S.C. § 1332 because Biwer and American Crystal are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

4.     Venue is proper under 28 U.S.C. § 1391 based on the location of a substantial part of the events and activities underlying this counterclaim took place in Minnesota terms of the contract between the parties which is at issue in this counterclaim.

### FACTUAL ALLEGATIONS

5.     American Crystal and Biwer entered into a contract comprised of three agreements under which Biwer would provide software and services for the implementation of a customized software solution called "CPS" that would eventually allow American Crystal to manage its commodity procurement-related tasks as a component of American Crystal's larger Enterprise Resource Planning (ERP) software

platform. To be clear, Biwer's contract with American Crystal did not contemplate Biwer providing American Crystal's ERP software platform.  Efforts to carry-out the contract and implement a finished CPS software solution for American Crystal shall be referred to as "the project."

6.     The three written agreements comprising the contract between American Crystal and Biwer included a Contract Services Agreement with an effective date of January 14, 2019, a Software License Agreement with an effective date of January 14, 2019, and a Statement of Work (SOW) with an effective date of February 8, 2019.

7.     The Contract Services Agreement contains the terms and conditions under which Biwer and American Crystal agreed that Biwer would provide a variety of software solutions and professional technology development and integration services.

8.     The Software License Agreement contains the terms and conditions under which Biwer and American Crystal agreed that American Crystal would receive a license permitting the use of a suite of software programs from Biwer's Commodity Procurement System, which is designed to manage procurement-related tasks for clients.

9.     The SOW described, among other things, the scope of professional services that Biwer would perform under the Contract for Services. Under the SOW, the finished CPS software solution was to be delivered incrementally with the achievement of 15 milestones each of which involved different tasks and deadlines for completion.  The scope of professional services and the deadlines of the milestones in the SOW were subject to change by agreement of the parties.

10.   Biwer's performance of its contractual responsibilities was not possible without significant cooperation throughout the project from American Crystal. In multiple respects, the parties' contract expressly contemplated the need for such cooperation.

11.   The Contract for Services included an obligation on the part of American Crystal to cooperate with Biwer's efforts to perform its contractual services on the project. In section 3.2 of the Contract for Services, American Crystal acknowledged "that certain aspects of the Services require cooperation and coordination with Customer personnel." In section 3.2, American Crystal agreed "to make available, as reasonably necessary, the resources required to complete the Services. Customer shall use reasonable efforts to ensure timely completion of such aspects and any delay in the completion of the Services due to Customer's inability to perform such aspects in a timely fashion shall not work to prejudice Biwer with regard to payment" of the payments called for in the SOW. Section 3.2 further provided that Biwer would work with American Crystal to complete a SOW.

12.   In section 5.1 of the Contract for Services, American Crystal agreed "that it will cooperate with Biwer in accomplishing the purposes of" Biwer's professional services under the SOW.

13.   In section 10.15 of the Contract for Services, American Crystal agreed to fully cooperate and work in a timely manner with Biwer as necessary to facilitate Biwer's performance of its contractual obligations to American Crystal and to facilitate the timely resolution of all problems that may arise and impact Biwer's professional services.

14.    Under the SOW, Biwer and American Crystal agreed that the project managers from both companies would have responsibility of managing the scope of the project.

15.    Under the SOW, American Crystal agreed to assume the following contractual duties in connection with the project:

    a.  American Crystal would designate a Project Manager for the project, a person who would administer the SOW for American Crystal;

    b.  American Crystal's Project Manager or his/her designee would serve as American Crystal's liaison with Biwer and "shall review and give approval to" the details of the scope of work and professional services under the SOW;

    c.  American Crystal would provide and make resources available for the purpose of filling the following roles on the project – project manager, subject matter experts, business analysts, enterprise system architects, QA / application acceptance testers, developers and other roles that may be needed to complete the project; and

    d.  American Crystal would examine documents submitted by Biwer and render decisions pertaining thereto "promptly, to avoid unreasonable delay" in the progress of Biwer's work.

16.    On June 19, 2019, American Crystal formally began the process of terminating the contract by notifying Biwer that Biwer was in material breach. However, Biwer was not in material breach. American Crystal wrongfully terminated its contract with Biwer. American Crystal started the termination process before expiration of any of the existing deadlines for the achievement of any of the milestones in the SOW.

17.    From the date the parties entered into the Contract for Services through the date of wrongfully termination, American Crystal delayed and prevented Biwer's

performance of the professional services and the achievement of milestones under the SOW.

## COUNT I
### (Breach of Contract)

18.     Biwer realleges and reincorporates the allegations in Paragraphs 1 through 17 of the Counterclaim.

19.     The contract between Biwer and American Crystal relating to the project was supported by offer and acceptance by the parties.

20.     The contract between Biwer and American Crystal for the project was supported by valid consideration as the parties exchanged promises involving the performance of services, the assumption of responsibilities, the payment of money, and the forbearance of rights as reflected in greater detail within the Contract for Services, SOW and Software License Agreement.

21.     American Crystal had contractual responsibilities for cooperating and coordinating with Biwer to facilitate Biwer's performance of the professional services and achievement of milestones in the SOW.

22.     American Crystal materially breached the Contract for Services and the SOW by failing to satisfy American Crystal's cooperation and coordination responsibilities in the following respects:

> a.  American Crystal failed to review, provide feedback and approve the Applicable Requirements submitted by Biwer in a reasonably timely fashion as needed for advancement of the project;

b. American Crystal failed provide Biwer with access to adequate resources and American Crystal's internal subject matter experts as needed for advancement of the project;

c. American Crystal failed to set up hardware to create a developmental environment so that Biwer had someplace to deliver products for review, comment and approval by American Crystal as needed for advancement of the project;

d. American Crystal failed to deliver detailed functional requirements to Biwer in a reasonably timely fashion as needed for advancement of the project; and

e. American Crystal failed to provide the project management and oversight contemplated in the SOW, including lack of participation in status report meetings with the executive oversight team and meetings during the kick-off phase of the project as necessary to organize the project and create a project plan for the design phase of the project.

23. American Crystal also materially breached the contract by terminating it prematurely and in the absence of a material breach on the part of Biwer, which violated the agreed-upon terms of termination set forth in section 6.2 of the Contract for Services.

24. As a direct and proximate result of American Crystal's breach of contract, Biwer has sustained damages, including but not limited to unpaid charges for Biwer's professional services rendered on the project, the economic benefits of the contract that Biwer would have enjoyed had American Crystal honored the contract to completion, harm to Biwer's professional reputation within the industry, attorney's fees, and costs associated with the unexpected reallocation of Biwer's personnel and resources following wrongful termination of the contract.

## COUNT II
### (Breach of Duty of Good Faith and Fair Dealing)

25.     Biwer realleges and reincorporates the allegations in Paragraphs 1 through 24 of the Counterclaim.

26.     The contract between Biwer and American Crystal included an implied covenant of good faith and fair dealing in the parties' conduct in the performance of that contract.

27.     American Crystal violated the covenant of good faith and fair dealing by:

   a.  Terminating the contract prematurely without cause and without a reasonable opportunity to cure the vaguely alleged breach;

   a.  American Crystal failed to review, provide feedback and approve the Applicable Requirements submitted by Biwer in a reasonably timely fashion as needed for advancement of the project;

   b.  American Crystal failed provide Biwer with access to adequate resources and American Crystal's internal subject matter experts as needed for advancement of the project;

   c.  American Crystal failed to set up hardware to create a developmental environment so that Biwer had someplace to deliver products for review, comment and approval by American Crystal as needed for advancement of the project;

   d.  American Crystal failed to deliver detailed functional requirements to Biwer in a reasonably timely fashion as needed for advancement of the project; and

   e.  American Crystal failed to provide the project management and oversight contemplated in the SOW, including lack of participation in status report meetings with the executive oversight team and meetings during the kick-off phase of the project as necessary to organize the project and create a project plan for the design phase of the project.

28.     Biwer has sustained damages including lost earnings, additional expenses, and reputational harm as a direct and proximate result of American Crystal's breach of the duty of good faith and fair dealing.

WHEREFORE, Biwer prays for judgment of this Court:

1.      Dismissing Plaintiff's Complaint with prejudice;

2.      Awarding damages to Biwer in an amount to be determined at trial;

3.      Awarding Biwer its costs and expenses incurred in this action, including reasonable attorneys' fees; and

4.      Awarding Biwer such other and further relief as this Court deems just and equitable.

ARTHUR, CHAPMAN, KETTERING,
SMETAK & PIKALA, P.A.

Dated: December 20, 2019                s/Eugene C. Shermoen, Jr.
                                        Eugene C. Shermoen, Jr. (#183246)
                                        Timothy J. Carrigan (#0338412)
                                        500 Young Quinlan Building
                                        81 South Ninth Street
                                        Minneapolis, MN 55402-3214
                                        P: (612) 339-3500
                                        F: (612) 339-7655
                                        ecshermoen@ArthurChapman.com
                                        tjcarrigan@ArthurChapman.com

                                        *Attorneys for Defendant Biwer & Associates, Inc.*